UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SALVADOR ALVAREZ CHAVEZ,<br><br>Plaintiff,<br><br>v.<br><br>POLLY KAISER, et al.,<br><br>Defendants. | Case No. 25-cv-06984-LB<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION**<br><br>Re: ECF No. 15 |

**INTRODUCTION**

Petitioner Salvador Alvarez Chavez, a 52-year-old Mexican national who has resided in the United States for nearly thirty years, challenges his detention, after an immigration judge (IJ) released him on bond and then revoked it after the Board of Immigration Appeals (BIA) held that in like circumstances, detention was mandatory. *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). He seeks a preliminary injunction, contending that he is entitled to release under 8 U.S.C. § 1226(a), which permits bond hearings for certain noncitizens. He was detained under 8 U.S.C. § 1225(b)(2)(A), which applies to "applicants for admission." He asserts that the government's recent reinterpretation of §§ 1226(a) and 1225(b) — endorsed by the BIA in *Yajure Hurtado* — is

ORDER – No. 25-cv-06984-LB

erroneous and that his continued detention without bond causes irreparable harm.[1] The government responds that the plain text of § 1225 mandates the petitioner's detention as an "applicant for admission" who entered without inspection, regardless of his long residence in the United States.[2]

The court grants the motion for a preliminary injunction, primarily because the petitioner has shown a likelihood of success on the merits. A decades-long interpretation of § 1226(a) supports applying it here. The government's recent position, grounded in a textual analysis without any distinguishing of its earlier interpretation, does not support its outcome of detention without bond. Otherwise, the petitioner has demonstrated irreparable harm from prolonged detention, and the balance of equities and public interest favor relief. The respondents must release the petitioner on the bond previously set by the immigration judge.

**STATEMENT**

The petitioner entered the United States without inspection in or around 1997 and has resided here continuously since, living in Sonoma County, California.[3] He is 52 years old, married to a U.S. citizen, and the father of six U.S. citizen children, one of whom has special needs requiring ongoing care.[4] He has no significant criminal history: in 2005, he was charged with driving without a license and completed probation, and in 2018, he was arrested and released without charges.[5] In September 2024, he applied for adjustment of status to lawful permanent resident under 8 U.S.C. § 1255, based on his marriage, and responded to requests for evidence from U.S. Citizenship and Immigration Services (USCIS).[6] His application remains pending in San Francisco.[7]

---

[1] Mot. – ECF No. 15 at 12–19; Gorney Decl. – ECF No. 15-5 at 2–3 (¶¶ 2–4, 6). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Opp'n – ECF No. 19 at 13–15.

[3] Mot. – ECF No. 15 at 10; Gorney Decl. – ECF No. 15-5 at 2 (¶¶ 2–3).

[4] Gorney Decl. – ECF No. 15-5 at 2 (¶ 3).

[5] *Id.* (¶ 4).

[6] *Id.* at 3 (¶ 8); Form I-485, Ex. 3 to Hubbard Decl. – ECF No. 19-1 at 15–34.

[7] Gorney Decl. – ECF No. 15-5 at 3 (¶ 8).

On August 18, 2025, ICE arrested the petitioner in Rohnert Park, California, pursuant to an immigration warrant.[8] He was charged with removability under 8 U.S.C. § 1182(a)(6)(A)(i) for entering without inspection and transferred to the El Paso Service Processing Center in Texas.[9] On September 3, 2025, an IJ held a bond hearing, found jurisdiction under § 1226(a), determined that the petitioner was not a flight risk or a danger to the community, and ordered his release on an $8,000 bond.[10] The Department of Homeland Security (DHS) invoked an automatic stay of the IJ's decision under 8 C.F.R. § 1003.19(i)(2) on September 4, 2025, and appealed to the BIA.[11] The next day, on September 5, 2025, the BIA issued *Matter of Yajure Hurtado*, adopting DHS's arguments, overruling prior agency practice, and holding that § 1225(b)(2)(A) applies to all noncitizens present in the United States without admission, including long-term residents who entered without inspection, subjecting them to mandatory detention during removal proceedings.[12] 29 I&N Dec. at 220.

On September 15, 2025, the IJ issued a new order denying bond, citing *Yajure Hurtado* and concluding that the petitioner was subject to mandatory detention under § 1225(b)(2)(A).[13] The petitioner is detained at the El Paso facility, separated from his family, and unable to support them or care for his child with special needs.[14]

Historically, DHS interpreted § 1226(a) as applying to individuals like the petitioner — those present without admission but apprehended inland after unlawful entry — allowing bond hearings.[15]

---

[8] Mot. – ECF No. 15 at 2; Gorney Decl. – ECF No. 15-5 at 3 (¶ 9).

[9] Mot. – ECF No. 15 at 2; Notice to Appear, Ex. 2 to Hubbard Decl. – ECF No. 19-1 at 11–13; Gorney Decl. – ECF No. 15-5 at 3 (¶ 9).

[10] IJ Bond Order, Ex. 4 to Hubbard Decl. – ECF No. 19-1 at 36; Gorney Decl. – ECF No. 15-5 at 3 (¶ 10).

[11] Mot. – ECF No. 15 at 2; Notice of Intent to Appeal, Ex. 5 to Hubbard Decl. – ECF No. 19-1 at 39; Gorney Decl. – ECF No. 15-5 at 3 (¶ 11).

[12] Mot. – ECF No. 15 at 2–3.

[13] *Id.* at 3; IJ Denial Order, Ex. 6 to Hubbard Decl. – ECF No. 19-1 at 41; Gorney Decl. – ECF No. 15-5 at 4 (¶ 13).

[14] Gorney Decl. – ECF No. 15-5 at 3 (¶ 9).

[15] Opp'n – ECF No. 19 at 9 (admitting prior interpretation); Reply – ECF No. 20 at 3 (citing *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1116 (9th Cir. 2007)).

The government acknowledges this longstanding practice but asserts that it is incorrect based on its statutory analysis and citing *Yajure Hurtado* and July 8, 2025, DHS guidance directing officers to treat individuals like the petitioner as "arriving aliens" under § 1225.[16]

The petitioner filed an amended habeas petition under 28 U.S.C. § 2241 on September 16, 2025, challenging his detention as a violation of the INA and due process.[17] He moved for a TRO, since converted to a motion for a preliminary injunction, seeking his release on his own recognizance or on the previously ordered $8,000 bond.[18] The court held a hearing on October 2, 2025.

## STATUTORY FRAMEWORK

The INA defines an "applicant for admission" as an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival)." 8 U.S.C. § 1225(a)(1) (cleaned up); *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020). Under Section 212(a) of the Act, 8 U.S.C. § 1182(a), certain classes of noncitizens are inadmissible, and thus ineligible to be admitted to the United States, including those "present in the United States without being admitted or paroled." 8 U.S.C. § 1182(a)(6)(A)(i). A noncitizen who is present in the United States but has not been admitted "is treated as an applicant for admission." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (cleaned up).

Applicants for admission, including those present without being admitted or paroled, may be removed from the United States by, among other ways, removal proceedings before an immigration judge under 8 U.S.C. § 1229a or expedited removal under § 1225(b)(1). 8 U.S.C. § 1182(a)(6). Section 1229a governs full removal proceedings initiated by a notice to appear and conducted before an immigration judge. Expedited removal under § 1225(b)(1) applies in narrower, statutorily defined circumstances — typically to individuals apprehended at or near the border who lack valid entry documents or commit fraud upon entry — and allows for their

---

[16] Opp'n – ECF No. 19 at 9.
[17] Am. Pet. – ECF No. 12.
[18] Mot. – ECF No. 15 at 1–3.

ORDER – No. 25-cv-06984-LB                4

removal without a hearing before an immigration judge, subject to limited exceptions. DHS has discretion to pursue expedited removal under § 1225(b)(1) or § 1229a. *Matter of E-R-M- & L-R-M-*, 25 I&N Dec. 520, 524 (BIA 2011). In this case, the government cites 8 U.S.C. § 1225(b)(1)–(2) to support mandatory detention. *Jennings*, 583 U.S. at 297 ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded.").

The next sections review detention under §§ 1225(b)(1), 1225(b)(2), and 1226(a).[19]

### 1. Detention Under § 1225(b)(1)

Section 1225(b)(1) authorizes immigration officers to remove certain inadmissible noncitizens "from the United States without further hearing or review." It applies to "arriving aliens" and "certain other" noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Jennings*, 583 U.S. at 287; 8 U.S.C. § 1225(b)(1)(A)(i), (iii). Section 1225(b)(1) allows the expedited removal of any noncitizen "described in" § 1225(b)(1)(A)(iii)(II) — that is, any noncitizen not "admitted or paroled into the United States" and "physically present" for fewer than two years — who is inadmissible under § 1182(a)(7) at the time of "inspection." The Attorney General's or Secretary's authority to "designate" classes of noncitizens as subject to expedited removal is subject to her "sole and unreviewable discretion." 8 U.S.C. § 1225(b)(1)(A)(iii); *see Am. Immigr. Laws. Ass'n v. Reno*, 199 F.3d 1352 (D.C. Cir. 2000) (upholding the expedited removal statute).[20] Section 1225(b)(1) includes procedures when a

---

[19] The government cites these as relevant. Opp'n – ECF No. 19 at 7–10.

[20] In January 2025, the Secretary issued a notice that the scope of expedited removal would be "the fullest extent authorized by Congress." *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139 (Jan. 24, 2025). The notice enabled DHS "to exercise the full scope of its statutory authority to place in expedited removal, with limited exceptions, aliens determined to be inadmissible under [§ 1182(a)(6)(C) or (a)(7)] who have not been admitted or paroled into the United States and who have not affirmatively shown, to the satisfaction of an immigration officer, that they have been physically present in the United States continuously for the two-year period immediately preceding the date of the determination of inadmissibility," and who were not otherwise covered by prior designations. *Id.* at 8139–40.

noncitizen indicates an intent to apply for asylum or expresses a fear of persecution, torture, or return to the noncitizen's country. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 235.3(b)(4).[21]

### 2. Detention Under § 1225(b)(2)

Section 1225(b)(2) is a "broader," "catchall provision" that "applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287. A noncitizen "who is an applicant for admission" is subject to mandatory detention pending full removal proceedings "if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (such noncitizens must "be detained for a proceeding under section 1229a"); *Jennings*, 583 U.S. at 299; 8 C.F.R. § 235.3(b)(3) (a noncitizen placed into Section 1229a removal proceedings in lieu of expedited removal proceedings under Section 1225(b)(1) "shall be detained" pursuant to 8 U.S.C. § 1225(b)(2)). DHS has the sole discretion to temporarily release on parole "any alien applying for admission to the United States" on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see Biden v. Texas*, 597 U.S. 785, 806 (2022).

### 3. Detention Under § 1226(a)

8 U.S.C. § 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289. Under § 1226(a), DHS may detain a noncitizen during her removal proceedings, release her on bond, or release her on conditional parole. Immigration officers can release a noncitizen if she demonstrates that she "would not pose a danger to property or persons" and "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). A noncitizen can request a custody redetermination (i.e., a bond hearing) by an immigration judge at any time before a final order of removal is issued. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1), 1003.19. At a custody redetermination,

---

[21] *See Hernandez Nieves v. Kaiser*, No. 25-cv-06921-LB, 2025 WL 2533110, at *2–3 (N.D. Cal. Sept. 3, 2025) (summarizing procedures).

the immigration judge has broad discretion to continue detention or release the noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1); *In re Guerra*, 24 I&N Dec. 37, 39–40 (BIA 2006) (listing nine factors for immigration judges to consider).

The government has interpreted Section 1226(a) to be an available detention authority for noncitizens present without being admitted or paroled and placed directly in full removal proceedings under Section 1229a. *See, e.g.*, *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1116 (9th Cir. 2007). It now contends that this is incorrect and that § 1225 is the only applicable detention authority for all applicants for admission.[22]

## ANALYSIS

The standards for a TRO and a preliminary injunction are identical. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Movants must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent an injunction, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The irreparable injury must be likely and immediate. *Id.* at 20–22. Alternatively, movants may show "serious questions going to the merits" and a balance of hardships that tips sharply in their favor, provided that the other elements are satisfied. *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). When the government is a party, the balance of equities and public interest merge. *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018). A preliminary injunction preserves the status quo and parties' rights until final judgment. *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010).

The factors support a preliminary injunction.

**1. Likelihood of Success on the Merits**

The petitioner argues he is likely to succeed because § 1226(a) governs his detention, entitling him to a bond hearing, and the government's reinterpretation — via *Yajure Hurtado* — is contrary

---

[22] Opp'n – ECF No. 19 at 9–10.

to longstanding practice, arbitrary, and violates due process.[23] The government counters that § 1225(b)(2)(A) mandates detention for "applicants for admission," like the petitioner.[24] The likelihood-of-success factor favors the petitioner.

The INA provides distinct detention frameworks. Section 1226(a) allows DHS to detain noncitizens pending removal decisions but permits release on bond if they are not a flight risk or danger. 8 U.S.C. § 1226(a). Section 1225(b)(2)(A) mandates detention for "applicants for admission" during proceedings if they are "not clearly and beyond a doubt entitled to be admitted." *Id.* § 1225(b)(2)(A). "Applicants for admission" include those "seeking admission" or otherwise not admitted. *Id.* § 1225(a)(1). Section 1225(b) requires detention without bond hearings during proceedings. *Jennings*, 583 U.S. at 303; *Thuraissigiam*, 591 U.S. at 111.

Here, the petitioner has shown a likelihood of success on the merits. The government's longstanding interpretation — that § 1226(a) applies to noncitizens like the petitioner who entered without inspection but were apprehended inland — is consistent with the statutory text, structure, and history. For decades, DHS applied § 1226(a) to such individuals, acknowledging they are not "arriving aliens" at ports of entry.[25] This is "powerful evidence" of a "natural and reasonable" reading of the statute. *Abramski v. United States*, 573 U.S. 169, 203 (2014) (Scalia, J., dissenting); *see also Bankamerica Corp. v. United States*, 462 U.S. 122, 130 (1983) (relied on over sixty years of government and interpretation to reject the government's new interpretation of the law).

The phrase "seeking admission" in § 1225(a)(1) implies affirmative action toward admission, such as presenting at a port, not passive presence after unlawful entry. *See Thuraissigiam*, 591 U.S. at 138 (distinguishing "applicants" as those inspected or paroled). The "or otherwise" clause in § 1225(a)(3) does not expand this to all unadmitted noncitizens; it addresses those evading inspection. Moreover, Congress used "arriving alien" narrowly elsewhere in § 1225, suggesting

---

[23] Mot. – ECF No. 15 at 10–19; Reply – ECF No. 20 at 3–7.

[24] Opp'n – ECF No. 19 at 13–21.

[25] *Id.* at 9; Reply – ECF No. 20 at 3 (citing *Ortega-Cervantes*, 501 F.3d at 1116).

§ 1225(b)(2)(A) does not apply broadly to inland apprehendees. *See* 8 C.F.R. § 1001.1(q) (defining "arriving alien" as one at a port or recently entered).

The recent shift, prompted by a July 2025 DHS guidance and *Yajure Hurtado*, lacks compelling justification and appears driven by policy rather than textually compelled. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395–96 (2024) (courts owe no deference to agency interpretations). This abrupt change also implicates due process, as the petitioner had a protected liberty interest in the bond hearing under the prior regime. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (prolonged detention raises due process concerns); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990) (long-term residents have due process rights). Denying bond without individualized process after granting it shocks the conscience. *See Johnson v. Eisentrager*, 339 U.S. 763, 784 (1950).

District courts have rejected similar reinterpretations post- *Yajure Hurtado*. *See, e.g.*, *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *1, *4–7 (W.D. Ky. Sept. 19, 2025) (ordering the release of a petitioner who was present in the U.S. for over twenty years, with three U.S. citizen children, because section 1226, not section 1225, applied; "If Congress had intended for Section 1225 to govern all noncitizens present in the country, who had not been admitted, then it would not have recently adopted an amendment to Section 1226 that prescribes a subset of noncitizens be exempt from the discretionary bond framework." (cleaned up and collecting cases)); *Singh v. Lewis*, No. 4:25-cv-96-RGJ, 2025 WL 2699219, at *3 (W.D. Ky. Sept. 22, 2025) (same; petitioner had been in the United States for more than twelve years and was "not 'seeking admission' into the United States"); *Hasan v. Crawford*, __ F. Supp. 3d __, 2025 WL 2682255, at *6–10, *13 (E.D. Va. Sept. 19, 2025) (ordering immediate release under § 1226, and rejecting argument that § 1225(b)(2) applied to someone like the petitioner who had been in the United States for several months, had not committed any crimes, and attended all required meetings with ICE officials); *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 U.S. Dist. LEXIS 171364, at *15–16 (C.D. Cal. July 28, 2025) (same; "respondents fail to articulate any valid justification, legal or otherwise, for the application of § 1225 to Petitioners as applicants for admission." (cleaned up)). These cases, while not binding, persuasively reject the government's argument, based on statutory

history and due-process concerns, that unlawful entrants should not fare better than applicants at ports of entry because Congress (and case law) has distinguished those categories of persons. *See Jennings*, 583 U.S. at 287–88; *Zadvydas*, 533 U.S. at 693.

The petitioner has shown a likelihood of success on the merits.

### 2. Irreparable Harm

The petitioner demonstrates irreparable harm from ongoing detention without bond. Prolonged immigration detention inflicts severe harm, including family separation, loss of income, and psychological distress.[26] *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1263 (W.D. Wash. 2025); *see also Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (prolonged detention without bond hearings raises due-process concerns). The petitioner's separation from his special-needs child exacerbates this. The government argues only that there is no harm because the detention is lawful.[27] This begs the question: the harm flows from the denial of a bond option the petitioner likely deserves. *See Hernandez*, 872 F.3d at 993 (detention without hearing causes irreparable injury). This factor favors the petitioner.

### 3. Balance of Equities and Public Interest

The balance of equities tips in the petitioner's favor. He poses no risk, as the IJ found, and release allows family support. The government has a minimal burden in releasing one person. The public interest favors due process and family unity over unchecked detention. *See Singh*, 2025 WL 2699219, at *4 (separation from his wife and U.S. citizen child struggling with finances and medical needs "strongly favor[ed]" the petitioner). The government's interest in enforcement is not undermined because the petitioner remains in proceedings. *See Hasan*, 2025 WL 2682255, at *4 (public interest in due process outweighs enforcement burdens). These factors support relief.

---

[26] Mot. – ECF No. 15 at 17–18.

[27] Opp'n – ECF No. 19 at 22.

**4. Scope of Relief**

The petitioner seeks immediate release on his recognizance or an $8,000 bond.[28] Given the likelihood of success, release on the prior bond is appropriate to preserve the status quo. *See Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

## CONCLUSION

The court grants the preliminary injunction and orders the petitioner's release on the bond issued by the IJ.

**IT IS SO ORDERED.**

Dated: October 9, 2025

LAUREL BEELER
United States Magistrate Judge

---

[28] Mot. – ECF No. 15 at 3.