United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

SALVADOR ALVAREZ CHAVEZ,

Petitioner,

v.

POLLY KAISER, et al.,

Respondents.

Case No. 25-cv-06984-LB

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Re: ECF No. 12

## INTRODUCTION

Petitioner Salvador Alvarez Chavez, a Mexican national who has resided in the United States for nearly thirty years, challenged his detention, after an immigration judge (IJ) released him on bond and then revoked it after the Board of Immigration Appeals (BIA) held that in like circumstances, the petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) — a departure from the government's longstanding interpretation of applying § 1226(a), which permits bond hearings, to noncitizens who entered without inspection but were apprehended inland. He filed a petition for habeas relief and moved for a temporary restraining order (later converted to a motion for a preliminary injunction), which the court granted and ordered his release on bond. The Ninth Circuit has now addressed this issue and confirmed that individuals like the petitioner, who have not yet been admitted to the United States but are present in the interior of the country, are subject to § 1226(a). *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1193 (9th Cir. 2026).

United States District Court
Northern District of California

The government filed its return, and the petitioner filed his traverse.[1] The government's arguments do not alter the court's prior analysis and have been rejected by the Ninth Circuit in *Rodriguez Vazquez*. Thus, the court grants the petition for habeas corpus. Re-detention of the petitioner requires providing him with a pre-detention hearing before a neutral decisionmaker in which the government must prove by clear and convincing evidence that he is a flight risk or danger to the public.

**STATEMENT**

The petitioner entered the United States without inspection in or around 1997 and has resided here continuously since, living in Sonoma County, California.[2] He was fifty-two when arrested, married to a U.S. citizen, and the father of six U.S. citizen children, one of whom has special needs requiring ongoing care.[3] He has no significant criminal history: in 2005, he was charged with driving without a license and completed probation, and in 2018, he was arrested and released without charges.[4] In September 2024, he applied for adjustment of status to lawful permanent resident under 8 U.S.C. § 1255, based on his status as the step-father of a U.S. citizen who is at least twenty-one years of age.[5] His application remains pending.[6]

On August 18, 2025, ICE arrested the petitioner in Rohnert Park, California, pursuant to an immigration warrant.[7] He was charged with removability under 8 U.S.C. § 1182(a)(6)(A)(i) for entering without inspection and transferred to the El Paso Service Processing Center in Texas.[8] On September 3, 2025, an IJ held a bond hearing, found jurisdiction under § 1226(a), determined that the petitioner was not a flight risk or a danger to the community, and ordered his release on an

---

[1] Return – ECF No. 28; Traverse – ECF No. 29. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 15 at 10; Gorney Decl. – ECF No. 15-5 at 2 (¶¶ 2–3).

[3] Gorney Decl. – ECF No. 15-5 at 2 (¶ 3).

[4] *Id.* (¶ 4).

[5] *Id.* at 3 (¶ 8); Form I-485, Ex. 3 to Hubbard Decl. – ECF No. 19-1 at 15–34.

[6] Gorney Decl. – ECF No. 15-5 at 3 (¶ 8).

[7] Mot. – ECF No. 15 at 2; Gorney Decl. – ECF No. 15-5 at 3 (¶ 9).

[8] Mot. – ECF No. 15 at 2; Notice to Appear, Ex. 2 to Hubbard Decl. – ECF No. 19-1 at 11–13; Gorney Decl. – ECF No. 15-5 at 3 (¶ 9).

United States District Court
Northern District of California

$8,000 bond.[9] The Department of Homeland Security (DHS) invoked an automatic stay of the IJ's decision under 8 C.F.R. § 1003.19(i)(2) on September 4, 2025, and appealed to the BIA.[10] The next day, on September 5, 2025, the BIA issued *Matter of Yajure Hurtado*, adopting DHS's arguments, overruling prior agency practice, and holding that § 1225(b)(2)(A) applies to all noncitizens present in the United States without admission, including long-term residents who entered without inspection, subjecting them to mandatory detention during removal proceedings.[11] 29 I&N Dec. 216, 220 (BIA 2025).

On September 15, 2025, the IJ issued a new order denying bond, citing *Yajure Hurtado* and concluding that the petitioner was subject to mandatory detention under § 1225(b)(2)(A).[12] Historically, DHS interpreted § 1226(a) as applying to individuals like the petitioner — those present without admission but apprehended inland after unlawful entry — allowing bond hearings.[13] The government acknowledges this longstanding practice but asserts that it is incorrect based on its statutory analysis and citing *Yajure Hurtado* and July 8, 2025, DHS guidance directing officers to treat individuals like the petitioner as "arriving aliens" under § 1225.[14]

The petitioner filed an amended habeas petition under 28 U.S.C. § 2241 on September 16, 2025, challenging his detention as a violation of the Immigration and Nationality Act (INA) and due process.[15] He moved for a TRO, since converted to a motion for a preliminary injunction, which the court granted, ordering his release on the bond previously set by the IJ.[16]

---

[9] IJ Bond Order, Ex. 4 to Hubbard Decl. – ECF No. 19-1 at 36; Gorney Decl. – ECF No. 15-5 at 3 (¶ 10).

[10] Mot. – ECF No. 15 at 2; Notice of Intent to Appeal, Ex. 5 to Hubbard Decl. – ECF No. 19-1 at 39; Gorney Decl. – ECF No. 15-5 at 3 (¶ 11).

[11] Mot. – ECF No. 15 at 2–3.

[12] *Id.* at 3; IJ Denial Order, Ex. 6 to Hubbard Decl. – ECF No. 19-1 at 41; Gorney Decl. – ECF No. 15-5 at 4 (¶ 13).

[13] Opp'n – ECF No. 19 at 9 (admitting prior interpretation); Reply – ECF No. 20 at 3 (citing *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1116 (9th Cir. 2007)).

[14] Opp'n – ECF No. 19 at 9.

[15] Am. Pet. – ECF No. 12.

[16] Mot. – ECF No. 15 at 1–3; Order – ECF No. 23. District courts have jurisdiction under 28 U.S.C. § 2241 to review habeas petitions by noncitizens challenging the lawfulness of their detention.

**STATUTORY FRAMEWORK**

The INA defines an "applicant for admission" as an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival)." 8 U.S.C. § 1225(a)(1) (cleaned up); *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020). Under Section 212(a) of the Act, 8 U.S.C. § 1182(a), certain classes of noncitizens are inadmissible, and thus ineligible to be admitted to the United States, including those "present in the United States without being admitted or paroled." 8 U.S.C. § 1182(a)(6)(A)(i). A noncitizen who is present in the United States but has not been admitted "is treated as an applicant for admission." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (cleaned up).

Applicants for admission, including those present without being admitted or paroled, may be removed from the United States by, among other ways, removal proceedings before an immigration judge under 8 U.S.C. § 1229a or expedited removal under § 1225(b)(1). 8 U.S.C. § 1182(a)(6). Section 1229a governs full removal proceedings initiated by a notice to appear and conducted before an immigration judge. Expedited removal under § 1225(b)(1) applies in narrower, statutorily defined circumstances — typically to individuals apprehended at or near the border who lack valid entry documents or commit fraud upon entry — and allows for their removal without a hearing before an immigration judge, subject to limited exceptions. DHS has discretion to pursue expedited removal under § 1225(b)(1) or § 1229a. *Matter of E-R-M- & L-R-M-*, 25 I&N Dec. 520, 524 (BIA 2011). In this case, the government cites 8 U.S.C. § 1225(b)(1)–(2) to support mandatory detention. *Jennings*, 583 U.S. at 297 ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded.").

The next sections review detention under §§ 1225(b)(1), 1225(b)(2), and 1226(a).

---

*Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). The parties consented to magistrate-judge jurisdiction. Consents – ECF Nos. 4–5.

United States District Court
Northern District of California

**1. Detention Under § 1225(b)(1)**

Section 1225(b)(1) authorizes immigration officers to remove certain inadmissible noncitizens "from the United States without further hearing or review." It applies to "arriving aliens" and "certain other" noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Jennings*, 583 U.S. at 287; 8 U.S.C. § 1225(b)(1)(A)(i), (iii). Section 1225(b)(1) allows the expedited removal of any noncitizen "described in" § 1225(b)(1)(A)(iii)(II) — that is, any noncitizen not "admitted or paroled into the United States" and "physically present" for fewer than two years — who is inadmissible under § 1182(a)(7) at the time of "inspection." The Attorney General's or Secretary's authority to "designate" classes of noncitizens as subject to expedited removal is subject to her "sole and unreviewable discretion." 8 U.S.C. § 1225(b)(1)(A)(iii); *see Am. Immigr. Laws. Ass'n v. Reno*, 199 F.3d 1352 (D.C. Cir. 2000) (upholding the expedited removal statute).[17] Section 1225(b)(1) includes procedures when a noncitizen indicates an intent to apply for asylum or expresses a fear of persecution, torture, or return to the noncitizen's country. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 235.3(b)(4).[18]

**2. Detention Under § 1225(b)(2)**

Section 1225(b)(2) is a "broader," "catchall provision" that "applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287. A noncitizen "who is an applicant for admission" is subject to mandatory detention pending full removal proceedings "if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (such noncitizens must "be

---

[17] In January 2025, the Secretary issued a notice that the scope of expedited removal would be "the fullest extent authorized by Congress." *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139 (Jan. 24, 2025). The notice enabled DHS "to exercise the full scope of its statutory authority to place in expedited removal, with limited exceptions, aliens determined to be inadmissible under [§ 1182(a)(6)(C) or (a)(7)] who have not been admitted or paroled into the United States and who have not affirmatively shown, to the satisfaction of an immigration officer, that they have been physically present in the United States continuously for the two-year period immediately preceding the date of the determination of inadmissibility," and who were not otherwise covered by prior designations. *Id.* at 8139–40.

[18] *See Hernandez Nieves v. Kaiser*, No. 25-cv-06921-LB, 2025 WL 2533110, at *2–3 (N.D. Cal. Sep. 3, 2025) (summarizing procedures).

United States District Court
Northern District of California

detained for a proceeding under section 1229a"); *Jennings*, 583 U.S. at 299; 8 C.F.R. § 235.3(b)(3) (a noncitizen placed into Section 1229a removal proceedings in lieu of expedited removal proceedings under Section 1225(b)(1) "shall be detained" pursuant to 8 U.S.C. § 1225(b)(2)). DHS has the sole discretion to temporarily release on parole "any alien applying for admission to the United States" on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see Biden v. Texas*, 597 U.S. 785, 806 (2022).

**3. Detention Under § 1226(a)**

8 U.S.C. § 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289. Under § 1226(a), DHS may detain a noncitizen during her removal proceedings, release her on bond, or release her on conditional parole. Immigration officers can release a noncitizen if she demonstrates that she "would not pose a danger to property or persons" and "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). A noncitizen can request a custody redetermination (i.e., a bond hearing) by an immigration judge at any time before a final order of removal is issued. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d)(1). At a custody redetermination, the immigration judge has broad discretion to continue detention or release the noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1); *In re Guerra*, 24 I&N Dec. 37, 39–40 (BIA 2006) (listing nine factors for immigration judges to consider).

The government has interpreted Section 1226(a) to be an available detention authority for noncitizens present without being admitted or paroled and placed directly in full removal proceedings under Section 1229a. *See, e.g.*, *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1116 (9th Cir. 2007). It now contends that this is incorrect and that § 1225 is the only applicable detention authority for all applicants for admission.[19]

[19] Return – ECF No. 28.

## ANALYSIS

The issues are (1) whether noncitizens like the petitioner — who entered without inspection but were apprehended inland — are subject to mandatory detention under § 1225(b)(2) or whether § 1226(a) applies, allowing release on bond or conditional parole, and (2) what process, if any, the petitioner is owed. Section 1226(a) applies, and due process requires that before re-detaining the petitioner, the government must provide him with a pre-detention hearing before a neutral decisionmaker in which the government must prove by clear and convincing evidence that he is a flight risk or danger to the public.

The government's arguments about which statute applies to detaining the petitioner are similar to those the court considered with the preliminary injunction: the petitioner is covered by the mandatory-detention provision of § 1225(b)(2) because (1) a person who is an applicant for admission is necessarily "seeking admission" and, even if not, the petitioner is seeking admission through his pending I-485 application to adjust status, (2) the petitioner's physical presence in the United States does not defeat mandatory detention because § 1225(b)(2) is not limited to "arriving aliens," (3) the overlap between §§ 1226(c) and 1225(b)(2) does not mean § 1225(b)(2) does not apply, (4) applying § 1226(a) instead of § 1225(b)(2) would subvert congressional intent, and (5) the government's position is consistent with *Jennings*.[20]

The petitioner responds that (1) the majority of courts to address the issue have rejected the government's position, (2) § 1225(b)(2) applies to noncitizens actively requesting to be admitted (like those presenting themselves at a port), (3) being an applicant for admission is not synonymous with "seeking admission," (4) the government's interpretation would violate the rule against surplusage by rendering the phrase "seeking admission" redundant with "applicant for admission" and creating overlap between §§ 1225(b)(2) and 1226(c), and (5) the legislative materials cited by the government as supporting Congress's intent to require detention for noncitizens like the petitioner are not about detention.[21]

---

[20] *Id.* at 17–27.

[21] Traverse – ECF No. 29 at 2–8.

United States District Court
Northern District of California

The government falls short of persuading the court to adopt its interpretation of §§ 1225 and 1226, let alone that its reading is "mandated" by the statute's plain language.[22] In granting the preliminary injunction, the court stated that the government's longstanding application of § 1226(a) to noncitizens like the petitioner was "powerful evidence" of a "natural and reasonable" reading of the statute.[23] The government does not meaningfully contest the persuasive force of its decades-long practice, arguing only that past practice does not justify disregarding clear statutory language.[24] But the contention that the government's reading of the statute is clear rings hollow where the government followed the opposite reading for years and the Ninth Circuit (and numerous judges in this district) has rejected the government's change in position.[25] None of the government's arguments justify a shift in approach.

This conclusion is also required by *Rodriquez Vazquez*, which rejected the government's plain-meaning arguments, stating that "the traditional view of the statute, which understands those 'seeking admission' to encompass the narrower category of aliens seeking entry at the border, better accords with the way § 1225(b)(2)(A) as a sentence is constructed." 183 F.4th at 1179. The government's interpretation would also make "seeking admission" superfluous and conflict with *Torres v. Barr*, which held that "an unadmitted alien's physical presence, which made her an 'applicant for admission' for purposes of 8 U.S.C. § 1225(a)(1), did not on its own mean she had thereby made an 'application for admission' for purposes of 8 U.S.C. § 1182(a)(7)."[26] *Rodriguez Vazquez*, 183 F.4th at 1175–77 (citing *Torres v. Barr*, 976 F.3d 918, 922, 927–29 (9th Cir. 2020)).

---

[22] Return – ECF No. 28 at 17 (cleaned up).

[23] Order – ECF No. 23 at 8 (citing *Abramski v. United States*, 573 U.S. 169, 203 (2014) (Scalia, J., dissenting); *Bankamerica Corp. v. United States*, 462 U.S. 122, 130 (1983)).

[24] Return – ECF No. 28 at 20–21.

[25] Traverse – ECF No. 29 at 2 (asserting that "at least 360 judges, in more than 3,000 cases, have rejected the government's arguments" and "27 judges, in approximately 130 cases, have agreed with the government").

[26] Return – ECF No. 28 at 17–23.

United States District Court
Northern District of California

Nor does the petitioner's pending application to adjust status make him a noncitizen "seeking admission." Under *Rodriguez Vazquez*, "seeking admission" means seeking "entry" into the United States, which "most naturally refers to a particular point in time, namely, the time an alien comes from outside into the United States." 183 F.4th at 1178 (cleaned up). An application under 8 U.S.C. § 1255 to adjust status from within the country is not an application for entry, and the government does not contend that the application confers any status or benefit.[27] The same reasoning disposes of the government's related contention that a noncitizen who contests removal rather than departing voluntarily is thereby "seeking admission": the Ninth Circuit rejected the premise that an unadmitted noncitizen present in the interior "remains in the perpetual state of seeking admission." *Id.*

The government's remaining arguments do not fare better under *Rodriquez Vazquez*. The Ninth Circuit rejected the government's argument that the overlap between §§ 1226(c) and 1225(b)(2) does not undercut its interpretation, reasoning that under the government's reading, "Congress's recent handiwork in the Laken Riley Act would be rendered superfluous, because those aliens subject to § 1226(c)(1)(E) would already be subject to mandatory detention under § 1225(b)(2)(A), as inadmissible aliens present in the United States."[28] *Id.* at 1185 ("This superfluity is not insignificant."). While recognizing that there was "some support" for the government's point that the statutory purpose of enacting the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 was to equalize treatment between noncitizens at the border and those who entered illegally, the Ninth Circuit determined that "there are equally plausible reasons why Congress in 1996 may have stopped short of requiring mandatory detention for all unadmitted aliens present in the United States," noting that legislative-history materials "do not indicate that the 'equal footing principle' extended to every possible aspect of immigration law" and, in the face of a substantial population of noncitizens present in the United States without admission, "Congress may have been concerned with the government's detention facility capacity,

[27] *Id.* at 22 n.5.

[28] *Id.* at 23–25.

as well as the costs and other burdens associated with housing [them]."[29] *Id.* at 1187–88 (cleaned up); *see id.* at 1183 ("[I]f the statute were departing from prior law and practice and imposing a new mass detention requirement, Congress would have drafted language more direct than what we have in § 1225(b)(2)(A) and the rest of § 1225.").

In sum, § 1226(a) applies to noncitizens like the petitioner who are physically present within the United States. The remaining question is what process the petitioner is due.

To determine the process due, the court applies the three-part test in *Mathews v. Eldridge*, which requires the opportunity to be heard at a meaningful time and in a meaningful manner.[30] 424 U.S. 319, 333 (1976); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 & n.2 (N.D. Cal. 2025) (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (the Ninth Circuit has "regularly applied *Mathews* in due process challenges to removal proceedings")); *Ramirez Clavijo v. Kaiser*, No. 25-cv-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025); *Diaz v. Kaiser*, No. 3:25-cv-05071-TLT, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025). The *Mathews* factors are (1) the private interest affected by the government action, (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) the government's "interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

The petitioner has a private interest in remaining out of custody. *Pinchi*, 792 F. Supp. 3d at 1033–35 (reaching this conclusion on similar facts); *Ramirez Clavijo*, 2025 WL 2419263, at *6 (same). He was arrested by ICE pursuant to an immigration warrant and determined by an IJ not to be a flight risk and ordered released on an $8,000 bond under § 1226(a). While the IJ issued an

---

[29] *Id.* at 25–26. The petitioner did not respond to the government's argument that its reading is consistent with *Jennings*. Return – ECF No. 28 at 26–27; *Narang v. Gerber Life Ins. Co.*, No. 18-CV-04500-LHK, 2018 WL 6728004, at *4 (N.D. Cal. Dec. 21, 2018) (a failure to respond to an argument is a concession of it) (collecting cases). It does not matter: the Ninth Circuit read *Jennings* as "reflect[ing] the traditional understanding of the distinction between § 1225 and § 1226." *Rodriguez Vazquez*, 183 F.4th at 1187; *see id.* at 1169–70.

[30] The government acknowledges that it is an open question in the Ninth Circuit about whether the *Mathews* factors apply under these circumstances. Return – ECF No. 28 at 27 n.6.

order the next day denying bond under § 1225(b)(2)(A), this court ordered the petitioner released on the original bond.[31] Having been released on bond under § 1226(a), the petitioner has a liberty interest in remaining so. *See Chavarriaga Rojas v. Albarran*, 826 F. Supp. 3d 1155, 1165 (N.D. Cal. 2025) ("[N]oncitizens 'who have established connections in this country [beyond merely entering the United States] have due process rights in deportation proceedings.'" (quoting *Thuraissigiam*, 591 U.S. at 107)); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent.").

The government's contrary argument — that as an "applicant for admission" the petitioner is treated for due-process purposes "as if stopped at the border" and is entitled only to the process Congress provided in § 1225[32] — rests on the premise that § 1225(b)(2)(A) governs his detention. It does not. And *Thuraissigiam* itself distinguishes noncitizens "at the threshold of entry" from those "who have established connections in this country." 591 U.S. at 107. The petitioner has lived in the United States for nearly three decades with his citizen wife and children, and he is not amenable to expedited removal under § 1225(b)(1). *See also Padilla v. ICE*, --- F.4th ---, 2026 WL 282204, at *11–12 (9th Cir. Sep. 21, 2026) (noncitizens present in the interior are entitled to due-process protections). That his release came by court order enforcing the IJ's § 1226(a) bond decision, rather than by DHS's own conditional release,[33] does not diminish the interest: a lawful release restores liberty regardless of which official ordered it.

The government does not argue against the second or third factors: there is a significant risk of erroneous deprivation of the petitioner's liberty interest without a pre-detention hearing, and the government lacks a countervailing interest for requiring a bond hearing only after the petitioner has been detained. *Pinchi*, 792 F. Supp. 3d at 1035–37; *Ramirez Clavijo*, 2025 WL 2419263, at *6.

---

[31] *See* Statement; Order – ECF No. 23.

[32] Return – ECF No. 28 at 27–29 (citing *Thuraissigiam*, 591 U.S. at 138–40).

[33] *Id.* at 9.

United States District Court
Northern District of California

The government contends that any bond hearing should follow re-detention and that the petitioner should bear the burden at it, citing *Rodriguez Diaz*, 53 F.4th at 1196–97, 1210–12.[34] *Rodriguez Diaz* upheld the ordinary § 1226(a) framework — an initial custody determination by ICE, followed by a bond hearing before an IJ at which the noncitizen bears the burden — against a prolonged-detention challenge by a petitioner who had received that hearing. *Id.* at 1196–97, 1207–12. Two things differ here. First, the petitioner has already had a § 1226(a) bond hearing, and a neutral decisionmaker found him neither a flight risk nor a danger. The question is what process must precede taking away liberty already restored, not what process must follow an initial arrest. Second, the post-detention process on which *Rodriguez Diaz* relied is not available to him in practice: under *Matter of Yajure Hurtado*, which binds immigration judges, the agency's position is that he is not entitled to a bond hearing at all, and the IJ so ruled on September 15, 2025.[35] On these facts, courts in this district have held that due process requires a hearing before an immigration judge or other neutral decisionmaker before re-detention, at which the government must prove by clear and convincing evidence that the petitioner is a flight risk or a danger to the community. *Llanes Tellez v. Bondi*, 826 F. Supp. 3d 1141, 1154 n.6 (N.D. Cal. 2025) (*Rodriguez Diaz* did not "change the applicable burden of proof"); *Pinchi*, 792 F. Supp. 3d at 1032–35 (collecting cases); *Ramirez Clavijo*, 2025 WL 2419263, at *5–6. The court follows them.

The government asks that any relief granted by the court not interfere with the government's ability to execute a valid order of removal. With no order of removal currently in place, the issue is not ripe, but the court notes that this order does not address the circumstances in which the government may detain the petitioner if he becomes subject to a final order of removal. *See Ruiz Otero v. Kaiser*, No. 25-cv-06536-NC, 2026 WL 2497542, at *6 (N.D. Cal. Aug. 25, 2026); *Quiroz v. Bondi*, No. 26-cv-02063-KES-CDB-HC, 2026 WL 1622901, at *1 (E.D. Cal. June 5, 2026) (citing *Bishop Paiute Tribe v. Inyo County*, 863 F.3d 1144, 1153 (9th Cir. 2017)).

---

[34] *Id.* at 29–30.

[35] IJ Denial Order, Ex. 6 to Hubbard Decl. – ECF No. 19-1 at 41; Return – ECF No. 28 at 10, 16.

United States District Court
Northern District of California

**CONCLUSION**

The court grants the petition. The petitioner's detention pending removal proceedings is governed by 8 U.S.C. § 1226(a), not § 1225(b)(2)(A). He remains released on the $8,000 bond set by the immigration judge on September 3, 2025. The respondents may not re-detain him during his removal proceedings unless, before doing so, they provide him a hearing before an immigration judge or other neutral decisionmaker at which the government proves by clear and convincing evidence that he is a flight risk or a danger to the community. This order does not address the government's authority to detain the petitioner if he becomes subject to a final order of removal.

This order resolves ECF No. 12. The clerk will separately enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: September 22, 2026

LAUREL BEELER
United States Magistrate Judge